# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SUSAN K. FRANK, et al.,

    Plaintiffs,

        v.                                               No. CIV 97-1226 BB/RLP

GERALD CHAMPION MEMORIAL
HOSPITAL, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Gerald Champion Hospital's motion for summary judgment (Doc. 83) Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion should be GRANTED in part and DENIED in part.

Defendant Hospital's motion for summary judgment requests dismissal of Plaintiffs' claims under the federal Emergency Medical Treatment and Active Labor Act, 42 U.S.C.A. § 1395dd ("EMTALA"). As discussed at the motions hearing, Plaintiffs' EMTALA claims are essentially two-fold. Plaintiffs maintain that Defendant did not provide an appropriate screening when Jason Frank was brought to the hospital for emergency-room treatment. Plaintiffs also maintain that Defendant failed to stabilize Jason's emergency medical condition and failed to transfer him appropriately to another medical facility.

Summary judgment on these claims should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion for summary judgment in light of these standards.

**Failure to Provide Appropriate Medical Screening:** In analyzing this claim, it is important to keep in mind the definitions and standards that have been engrafted onto EMTALA's language through judicial interpretation. EMTALA is not a federal malpractice statute. *Vickers v. Nash General Hosp.*, 78 F.3d 139, 142 (4th Cir. 1996). In essence, it requires only uniform treatment of individuals coming to an emergency room for treatment, stabilization of any emergency conditions about which the hospital is aware, and appropriate transfers (as defined in the statute) to other facilities. With respect to the appropriate-screening requirement, the question is not whether the screening provided was deficient in some manner, or fell below a certain standard of care. Instead, the only inquiry is whether the hospital treated Jason in accordance with its own established procedures. *See Vickers*; *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994) (a hospital violates the "appropriate medical screening" provision only when it does not follow its own procedures when initially screening an ER patient; it does not matter if those procedures are deficient

2

by some objective standard; EMTALA is intended only to ensure that each patient is accorded the same level of treatment as any other patient presenting at the same ER).

Plaintiffs have produced quite a bit of evidence criticizing the substance of the initial screening done on Jason, as well as the screening performed when he returned to the hospital. For example, there is expert testimony that the record-keeping by ER personnel and Dr. Boehm was sketchy, that Jason's demeanor and disorientation should have been watched more carefully, and that a new CT scan should have been done when he returned the second time. However, as the Court pointed out above, EMTALA does not require a hospital to perform a good medical screening, or even an adequate one; instead, the focus of the statute is on ensuring that everyone coming into the hospital with a certain type of injury is treated the same. *See Vickers; Repp*. On this point, Plaintiffs' evidence is deficient. Plaintiffs produced no evidence about Gerald Champion's standard ER procedures for head injuries, or how the screening (either initial or subsequent) performed on Jason differed from those standard procedures. Simply proving that Gerald Champion did not do a good job of screening Jason to detect his fracture and brain edema was not enough to state a claim under EMTALA. For that reason, summary judgment will be granted on this aspect of Plaintiffs' EMTALA claim.

**Failure to stabilize known emergency medical condition, and transfer patient appropriately:** At the hearing held on this motion, there was discussion as to whether Plaintiffs had to prove a discriminatory motive behind the transfer of Jason to William Beaumont Hospital, or the manner in which that transfer was initially attempted. The Court's research shows that no such discriminatory motive, or improper motive of any kind, must be proved, at least where the claim is based on the stabilize-and-transfer portion of EMTALA. *Roberts v. Galen of Virginia, Inc.*, 119

3

S.Ct. 685, 687 (1999). Instead, in this respect EMTALA is a strict-liability statute that is not solely directed at improper "dumping" of patients. *Summers v. Baptist Medical Center*, 91 F.3d 1132, 1137-38 (8th Cir. 1996). Defendant's motivation for transferring Jason, therefore, as well as for choosing the method of transport, are not relevant to this case.

On the other hand, the Court notes again that EMTALA is not a federal malpractice statute. It is not enough to show that Defendant should have known of Jason's emergency medical condition, or should have known his condition was not stable at the time of the transfer. Plaintiffs must instead prove Defendant had actual knowledge of Jason's emergency condition and of the fact the condition was not stable. *See Vickers; Urban v. King*, 43 F.3d 523, 526 (10th Cir. 1994) (EMTALA plaintiff must prove the hospital had actual knowledge of the individual's unstabilized emergency medical condition to succeed under the stabilize-and-transport portion of the statute).

The Court finds there is a factual dispute in this case as to whether Dr. Siebel knew, at the time the first ambulance left, that Jason had an emergency medical condition that had not been stabilized. Dr. Hall testified in his deposition that Dr. Siebel's own notes, pointing out the possibility of brain swelling and delayed bleed and the need for neurosurgical evaluation, showed that Dr. Siebel knew Jason's condition was not stable. (Hall depo. pp. 132-33) In addition, Plaintiffs have pointed to nurse's notes recorded at 2:30 p.m., showing that Jason was experiencing increased restlessness and that Dr. Siebel was aware of that fact. At 2:50 p.m., Dr. Siebel recorded Jason as stable. At 2:55, however, a mere five minutes later, the ambulance personnel recorded Jason as disoriented regarding time, date, and place. Based on this evidence, a reasonable fact-finder could determine Dr. Siebel did know Jason's condition was not stable, despite his testimony to the contrary and his note to the contrary on Jason's chart. Of course, a reasonable fact-finder could also decide Dr. Siebel did

4

not know Jason's condition was unstable. Given this conflicting evidence about what Dr. Siebel knew and when he knew it, the Court finds there is a genuine issue of fact about whether Jason's was stable at the time of the transfer and whether Dr. Siebel was aware of that fact.

The next step is to determine whether there is conflicting evidence about whether Jason was transferred appropriately, because even an unstable patient can be transferred under EMTALA if the transfer is appropriate. § 1395dd(c). The Court finds there is a genuine issue of fact as to whether Dr. Siebel chose an inadequate means of transporting Jason the first time. Under EMTALA, an appropriate transfer is one in which the transfer is effected through "qualified personnel and transportation equipment, ...including the use of necessary and medically appropriate life support measures during the transfer..." § 1395dd(c)(2). Both Dr. Hall and Dr. Van Osten strongly criticized the use of a basic ambulance rather than a life support ambulance to try to transfer Jason the first time. Both experts also felt Jason should have been intubated before the transfer, so he could be given medication such as Mannitol. *See, e.g.,* Dr. Van Osten depo. pp. 55-62, 67-70, 75-78. This evidence is directed both at the qualified-personnel requirement of the statute and the necessary-life-support-measures requirement, and is enough to raise an issue of fact about whether the initial attempted transfer violated EMTALA.

**Conclusion**

Based on the foregoing, the Court will GRANT Defendant's motion summary judgment as to the appropriate-screening issue, and will DENY the motion as to the stabilization-or-appropriate-transfer issue.

**ORDER**

Defendant Gerald Champion Memorial Hospital's motion for summary judgment (Doc. 83) is hereby GRANTED in part and DENIED in part, in accordance with the foregoing Memorandum Opinion.

DATED February 23, 1999.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**Attorneys**
For Plaintiffs
Gary Mitchell
P.O. Box 2460
Ruidoso, New Mexico 88345

For Defendant Gerald Champion Hospital
Rod M. Schumacher
Atwood, Malone, Turner & Sabin
P.O. Drawer 700
Roswell, New Mexico 88202

Norman D. Bloom
Fettinger, Bloom & Quinlan, P.C.
P.O. Drawer M
Alamogordo, New Mexico 88311

For Defendant Dr. Gary Siebel
Robert C. Gutierrez
Miller, Stratvert & Torgerson, P.A.
P.O. Box 25687
Albuquerque, New Mexico 87125